THE STATE ex rel. CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY, Petitioner, v. JAMES ELLISON et al., Judges of Kansas City Court of Appeals.

**In Banc, February 9, 1915.**

1. **CERTIORARI: To Court of Appeals: Conflict in Decisions.** A decision of a Court of Appeals will not, upon *certiorari,* be quashed on the theory that it is in conflict with the law as established by the last previous decision of the Supreme Court, if there is no such conflict.

2. ———: ———: ———: **Acceptance of Statement of Court of Appeals as True.** In determining upon *certiorari,* whether or not there is conflict between a decision of a Court of Appeals and the last previous decision of the Supreme Court, statements of facts, evidence or pleading contained in the opinion of the Court of Appeals will be accepted by the Supreme Court, which will not look beyond such recitals for any other ground for quashing its judgment.

3. ———: ———: ———: **Negligence: Waiting on Passenger Platform: Leaning Against Truck.** A fourteen-year-old boy was waiting on a railroad platform for the arrival of a train. On the platform was a truck upon which flour had been piled; one leg of the truck was broken, and as the boy leaned against

the truck, his weight caused it to fall, because it had no suffi-
cient support, and in falling it struck and broke the boy's leg,
and the Kansas City Court of Appeals held that he was using
the platform for the very purpose for which it was intended,
that he had a right to assume that a truck loaded with freight
was not a trap loaded with concealed danger, and that such
holding was not in conflict with Kelley v. Lawrence, 195 Mo.
75, wherein it was held that an employee who in passing through
a dark viaduct of a buggy warehouse attempted to sit down on
a railing or banister, with which he was familiar and which he
knew was not intended to be used as a seat, was guilty of con-
tributory negligence. *Held* that there is no conflict; and, hence,
the decision of the Court of Appeals affirming a judgment for
one thousand dollars for the boy, will not be quashed.

## *Certiorari.*

WRIT QUASHED.

*John E. Dolman* and *O. E. Shultz* for petitioner.

Respondents herein exceeded their jurisdiction in
their acts and proceedings in the case of Stark v. Rail-
road for the following reasons:  (1)  Their ruling and
decision that a loaded truck on a depot platform should
be loaded in such a manner as to be safe to "lean or
lounge" against by those waiting for a train on such
platform, is in conflict with the decisions of this court.
Kelley v. Lawrence, 195 Mo. 75.  (2)  It is not con-
troverted that the truck was loaded and placed on
the platform voluntarily by a third person without
the knowledge of the railroad company or its agents
and in less than an hour of the time of the injury com-
plained of; however, respondents held as a matter of
law that the railroad company knew that the truck was
loaded and loaded in a dangerous manner, and that
the question of notice of the defect by the company
was not one to be submitted to the jury.  This was
in direct conflict with the decisions of this court. Craw-
ford v. Stock Yards Co., 215 Mo. 414; Langan v.
Railroad, 72 Mo. 398; Badgley v. St. Louis, 149 Mo.

134; Vonkey v. St. Louis, 219 Mo. 37; Goodrich v. Railroad, 152 Mo. 233.

*Kendall B. Randolph, Edward G. Robinson, W. M. Williams, R. A. Mooneyham, Frank L. Forlow, E. P. Garnett, Atwood & Hill,* and *Park & Brown* for respondents.

The Constitution of 1875 and the Amendment of 1884 repose in the Courts of Appeals final appellate jurisdiction. This court had no appellate jurisdiction over them. The remedial writs were provided to keep those courts within their proper jurisdiction, but not to correct their errors. Constitution, art. 6, secs. 2, 3, 12; R. S. 1909, pp. 88, 93, 94. The St. Louis Court of Appeals in those cases originating within its territorial jurisdiction in which the amount in dispute did not exceed two thousand five hundred dollars, not involving constitutional or federal questions, nor the revenue laws, nor the title to real estate, nor the title to any office under the State, and wherein a county or other political subdivision of the State or a State officer was not a party, and not cases of felony, had, confessedly, final, exclusive jurisdiction. There was no provision for certifying cases. Its errors, if any, in the cases above mentioned were incurable. So long as it proceeded within the bounds of its constitutional jurisdiction in those cases it was subject to review by no earthly power. This was the view taken of the powers and jurisdiction of the St. Louis Court of Appeals in 1876 when the purposes of the Convention and of the people were fresh in the minds of the citizens and the judiciary. Britton v. Steber, 62 Mo. 370; In re Garesche, 85 Mo. 469; State ex rel. v. Philips, 96 Mo. 570; State ex rel. v. Court of Appeals, 99 Mo. 216; State ex rel. v. Smith, 101 Mo. 174; State ex rel. v. Smith, 104 Mo. 419; State ex rel. v. Smith, 105 Mo.

6; State ex rel. v. Smith, 107 Mo. 527; State ex rel v. Rombauer, 125 Mo. 632; State ex rel. v. Smith, 129 Mo. 585; State ex rel. v. Rombauer, 140 Mo. 121; Smith v. Railroad, 143 Mo. 33; Schaffer v. Railroad, 144 Mo. 170; Morris v. Railroad, 58 Mo. 78; Hess v. Ganz, 145 Mo. 54; Railroad v. Smith, 154 Mo. 300; Bradley v. Ins. Co., 163 Mo. 553; State ex rel. v. Smith, 176 Mo. 90; State ex rel. v. Smith, 173 Mo. 399; Wilden v. McAllister, 178 Mo. 732; Clark v. Railroad, 179 Mo. 66; State ex rel. v. Smith, 188 Mo. 167; Sublette v. Railroad, 198 Mo. 190; State ex rel. v. Broaddus, 207 Mo. 107; Houck v. Waterworks & E. L. Co., 215 Mo. 475. The writ of *certiorari* has never been used in this State as a substitute for a writ of error or an appeal and never as a medium of acquiring jurisdiction to determine the merits or details of a controversy. In re Breck, 252 Mo. 323; State ex rel. v. Dobson, 135 Mo. 1; State ex rel. v. Wells, 210 Mo. 621; Ward v. Board of Equalization, 135 Mo. 309; State ex rel. v. Broaddus, 245 Mo. 136.

## STATEMENT.

This is a proceeding by *certiorari* to review and quash the judgment and decision of the Kansas City Court of Appeals, in reviewing the case of Andrew J. Stark, Jr., by Guardian, v. Chicago, R. I. & Pac. Ry. Co., wherein the plaintiff recovered a judgment in the trial court for one thousand dollars for injuries caused by the fall of a loaded truck, standing on the platform of the railroad station, against which plaintiff leaned, causing it to fall over and catch and break his leg, and inflicting other injuries. The truck fell because it had no proper support at one end—a leg intended to support that end was partly broken, and when the weight of plaintiff, a boy of fourteen, was applied to that end of the truck, it tipped and caused the injury.

The truck had been loaded with sacks of flour by a shipper shortly before the accident. The boy was on the platform to meet his father expected to arrive on an incoming train. The Kansas City Court of Appeals, over the. dissent of one of its members, affirmed the judgment of the trial court. The proceeding by *certiorari* was begun here, upon the allegation in the petition therefor, that the opinion of the Kansas City Court of Appeals affirming the right of plaintiff to have a jury was in conflict with the ruling and decision of this court in Kelley v. Lawrence, 195 Mo. 75. The above facts are stated in the opinion of the majority of the Kansas City Court of Appeals, which opinion also expressly cited the decision of this court in Kelley v. Lawrence, supra, conceding its authority, but stating that it and other cases relied on by defendant below ''are not in point. As was said in Winscott v. Railroad, 151 Mo. App. 378, we are not dealing with a case where the plaintiff, traveling on a way prepared only for travel and intended to be used for no other purpose, is injured on account of another use he makes of the place, but with an instance where the plaintiff is injured while using the place for the very purpose for which it was intended and prepared. Plaintiff's business was that of waiting, in a place provided by defendant for that particular use, and it was not to be expected that he would stand in one particular spot for fear of moving, or that he would regard every object on the platform that offered some means of rest or relaxation as being loaded with concealed danger. He had a right to assume that a truck loaded with freight was not a hair-trigger trap that would go off and kill or maim him if he but casually touched or leaned against it. The evidence of plaintiff tends to show that a negligent breach by defendant of its duty to exercise proper care to maintain the station plat-

263Mo33

form in a reasonably safe condition was the proximate cause of his injury. The demurrer to the evidence was properly overruled."

## OPINION.

BOND, J. (After stating the facts as above)—In the case of State ex rel. v. Reynolds, 257 Mo. 19, it was ruled by the majority of this court that *certiorari* would lie to the Court of Appeals, for the Certiorari. purpose of quashing its judgment if based upon a decision in conflict with the last previous ruling of this court. To that doctrine I was unable to agree. But in the case cited, it is held that in exercising its power of supervision by *certiorari* this court would consider only the statements contained in the opinion of the Court of Appeals as to evidence, facts or pleading in the cause, and would not look beyond such recitals for any other grounds to quash the judgment of that court. [State ex rel. v. Reynolds, supra.]

Applying this rule to the matter in hand, we are unable to find in any part of the decision of the Court of Appeals certified to us, the announcement of any principle of law repugnant to the ruling made by this court in the case of Kelley v. Lawrence. That case is directly referred to by the Court of Appeals, its authority is not questioned by them, and they distinctly put their ruling upon the ground that the facts in the case before them were essentially different from those in the case of Kelley v. Lawrence. In the latter case an employee of the defendants passed through a viaduct from the main store to another building where his employer stored buggies for sale, for the purpose of making a trade with a prospective purchaser. Upon the return of the employee, plaintiff, and the purchaser, they stopped in the viaduct for the purpose of discussing the deal, and the plaintiff sat down, or started to sit

down, upon the railing on the south side. It gave way
with his weight, causing him to fall, and suffer the
injuries sued for. Plaintiff testified that he knew the
railing was not put there for a seat; that he did not
think about it; that he simply backed-up against the
rail and sat down, while discussing the deal with his
prospective purchaser. The court put its decision upon
the following ground:

"The plaintiff in this cause, as disclosed by the
evidence preserved in the record, was entirely famil-
iar with the use of this viaduct; he used it frequently
for a considerable length of time; he concedes that he
knew that this railing or banister was not placed on
the sides of the viaduct to be used as a seat or a rest-
ing place, and that it was not intended or designed for
that purpose; hence the use of it by him in the manner
disclosed by the evidence, which resulted in the in-
juries complained of, must be attributed to his own
carelessness and negligence, and this being so, the de-
fendants should not be held liable for such injuries,
and the court properly sustained the demurrer to the
evidence interposed by defendants at the close of the
plaintiff's case."

We fail to see anything in the judgment of the
Court of Appeals in the case in hand repugnant to the
above ruling of this court, for there was nothing in
the evidence recited in the opinion of the Court of Ap-
peals, which shows that the boy injured in this case
was guilty of contributory negligence as a *matter of
law.* He was rightfully on the platform of the defend-
ant railroad, and the evidence does not demonstrate
that he was aware of the defective and dangerous
condition of the broken truck permitted by defendant
to remain standing on the platform. The matter in
hand, therefore, does not fall within the ruling of the
court in the case cited (to which I dissent) that the
decision of any Court of Appeals, and its judgment

thereon, will be quashed when in conflict with the law as established in this State by the last previous ruling of this court.

It follows that the writ of *certiorari* in this case was improvidently awarded and should be quashed. It is so ordered.

PER CURIAM.—The foregoing opinion of BOND, J., rendered in Division One is adopted as the opinion of the Court in Banc. *Brown, Bond* and *Walker, JJ.*, concur; *Blair, J.*, concurs in result; *Graves* and *Faris, JJ.*, dissent; *Woodson, C. J.*, not sitting.